IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TOSUN MAHMUD FITIL,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF OMAHA, TODD SCHMADERER, Omaha Police Chief; and JUSTYN RYLEY, Omaha Police Officer;<br><br>        Defendants. | 8:22CV364<br><br>**MEMORANDUM AND ORDER** |

Plaintiff, Tosun Fitil, filed this action pursuant to 42 U.S.C. § 1983 against Defendants, City of Omaha; Omaha Police Chief Todd Schmaderer in his individual and official capacities; and Officer Justyn Ryley in his individual capacity. Filing No. 31 at 2. Plaintiff alleges Violation of the Fourth Amendment, Violation of the First Amendment/Retaliation, and Civil Conspiracy. *Id.* at 9–10. This matter is before the Court on Defendants' motion for summary judgment. Filing No. 47. The Court grants in part and denies in part Defendants' motion for summary judgment as set forth herein.

## I.    BACKGROUND

The parties dispute several of the key facts in this case which precludes summary judgment on certain claims as explained below. In order to provide the necessary background, the Court first describes the facts the parties agree on before elaborating on each side's version of the facts that are in dispute.

### A. Undisputed Facts

On May 29, 2020, a protest occurred at the intersection of 72nd and Dodge Streets ("intersection") in Omaha following the death of George Floyd. Filing No. 49 at 3; Filing

1

No. 51 at 2. The Omaha Police Department ("OPD") was dispatched to that area to assist in crowd control. Filing No. 49 at 2. Law enforcement was heavily present at that intersection to control the crowd. Filing No. 51 at 3. Officer Justyn Ryley, a member of OPD's Special Weapons and Tactics ("SWAT") team, was dispatched to the intersection to assist in this crowd control. Filing No. 49 at 1; Filing No. 51 at 4. Ryley and a number of other officers were located south of the PetCo parking lot. Filing No. 49 at 1; Filing No. 51 at 4.

Plaintiff, Tosun Fitil, was present at this protest, wearing a bright red sweatshirt. Filing No. 51 at 3; Filing No. 49 at 3. Fitil carried a sign that condemned not only the death of George Floyd, but also the death of Zachary Bear Heels—a Native American man who died while in OPD custody in 2017. Filing No. 49 at 3 n.1; Filing No. 51 at 2. This sign was undamaged and Fitil was able to use this sign at later protests. Filing No. 48 at 2; Filing No. 52 at 2.

At some point in the evening, protesters began throwing items at the officers. Filing No. 49 at 3; Filing No. 51 at 5. Law enforcement officers utilized pepper balls and flashbangs to disperse the protesters. Filing No. 49 at 3; Filing No. 51 at 5. Ryley stood thirty-five to forty-five feet away from Fitil when he deployed a flashbang grenade in Fitil's direction, which detonated at Fitil's ear level. Filing No. 49 at 3; Filing No. 51 at 8, 14.

Fitil filed suit against the City of Omaha, OPD Chief Todd Schmaderer, Officer Ryley, and Jane and John Doe officers in their individual capacities. Filing No. 31 at 1. He asserted claims under 42 U.S.C. § 1983 for violation of the First Amendment, violation of the Fourth Amendment, and civil conspiracy. Filing No. 31 at 8–11. Defendants have moved for summary judgment on all counts. Filing No. 47.

### B. Plaintiff's Statement of the Facts

Fitil contends that the officers dispatched to the intersection, including Ryley, were heavily armed. Filing No. 51 at 3, 5. Ryley was wearing tactical clothing and carried a duty belt with a pistol, extra magazines, med kit, AR-15-style rifle, and flashbang. Filing No. 50-2 at 21–23. Fitil says that his fellow protesters saw these heavily armed officers approach them and took this as an act of aggression. Filing No. 51 at 5. Fitil claims some protesters began throwing plastic bottles at the officers, and in response, the officers began firing pepper balls and tear gas canisters indiscriminately. Filing No. 50-1 at 18–22. Fitil says he noticed the officers shooting pepper balls into a group of young, peaceful protesters. *Id.* Seeing this, Fitil says he stepped into the line of fire and implored the officers to stop but was met with pepper balls. *Id.* Fitil says he turned his back and attempted to move away. *Id.*

Fitil stopped his retreat at a light pole, turning to face the police holding his sign. Filing No. 50-3. Fitil claims he was standing alone as the majority of protesters moved away from the sidewalk to seek refuge. Filing No. 51 at 6–8 (citing Filing No. 50-3). Fitil claims that Ryley used a sidearm throw to deploy a flashbang directly in the air in the direction of Fitil. *Id.* at 8. Fitil says as the flashbang fell, it struck the back of Fitil's head with enough force to cause a laceration and then exploded directly next to Fitil's head. *Id.* Fitil asserts that the detonation ruptured his eardrum, and the incendiary agent burned his skin and singed holes in his clothing. *Id.* Fitil attempted to retreat immediately after. *Id.* Before throwing the flashbang, Ryley stated, "Next freakin' smoke cannister they throw, I'm gonna make sure to have a bang in my hand." Filing No. 50-3. Ryley then threw the flashbang that exploded by Fitil's head. Filing No. 49 at 3; Filing No. 51 at 8,

3

14. Immediately after throwing the flashbang, Ryley stated that he had just thrown his "first bang." Filing No. 51 at 12. When another officer commented that the protestors were throwing rocks, Ryley stated, "I answered back with a flashbang." Filing No. 50-3.

Fitil also alleges that one of Ryley's comrades threw a flashbang shortly after Ryley, but that this one was deployed with an underhand throw, and not in the direction of any of the protesters. Filing No. 51 at 11. Fitil says that this second flashbang was deployed in a manner contradictory to OPD's Procedure titled "Response to Resistance – Special Techniques and Less Lethal Weapons" which states, "The head . . . should be avoided as targets unless deadly force is justified." Filing No. 53-5 at 822.

### C. Defendants' Statement of the Facts

Defendants contend that the protesters repeatedly threw rocks at the officers, attempted to set fires, broke store windows, and damaged law enforcement vehicles. Filing No. 50-2 at 25–27. Defendants acknowledge that they do not know if Fitil was throwing things or waving his arms. *Id.* at 75. Ryley's initial impression of the scene was that it was an out-of-control situation. *Id.* at 25–26. Ryley says that he aimed the flashbang at the ground to encourage the crowd to disperse and asserts that he never pointed it at Fitil. Filing No. 49 at 2*;* Filing No. 50-2 at 28, 65, 74–75. He claims that the flashbang did in fact hit the ground, but "took a strange bounce" which caused it to ultimately detonate at Fitil's ear level. Filing No. 50-2 at 38; Filing No. 50-4. Ryley says that after the flashbang detonated, Fitil ran away, drove himself home, and did not seek medical treatment for his injuries for several days. Filing No. 50-1 at 53–54.

### II.    STANDARD OF REVIEW

4

This Court will grant a motion for summary judgment if the movant shows that there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). This Court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. *Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 943–44 (8th Cir. 2008) (citations omitted). Instead, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018).

The moving party must support its motion by citing to specific areas in the record, or by showing that there is an absence of evidence supporting the nonmoving party's case. *Celotex Corp., v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1). The nonmoving party may not rest on allegations made in the pleadings, and must set forth, by affidavit or other evidence, specific facts that show a genuine issue of material fact exists. *Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007) (citing *Celotex*, 477 U.S. at 324). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Id.* (citing *Celotex*, 477 U.S. at 324). A fact is considered material if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a reasonably jury could return a verdict for either party, the summary judgment is inappropriate. *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021) (citing *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008)).

### III.    DISCUSSION

Defendants move for summary judgment on Fitil's three claims, all of which arise under § 1983. 42 U.S.C. § 1983 was enacted as part of The Civil Rights Act of 1871 and established a cause of action for someone who was deprived of their rights under the United States Constitution or other laws. 42 U.S.C. § 1983. Under § 1983, anyone who "under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" subjects a person within the United States jurisdiction to the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" is liable to the party injured. *Id.* A § 1983 action can be used to sue municipalities and other local governments, government officials in their official capacity, or government officials in their individual capacity. *See Monell v. Dep't. of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Municipal liability is limited to "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for." *Monell*, 436 U.S. at 694. The municipal government cannot be sued under § 1983 for an injury caused solely by its employees. *Id.*

In an action against a governmental actor in their official capacity, the real party in interest is the governmental entity, not the named official, so the suit should be treated as a suit against the entity. *Hafer*, 502 U.S. at 25 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). This requires that "the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (citations omitted). The only immunities available to a defendant in an official capacity suit are those that the governmental entity possesses. *Id.*

Personal-capacity suits impose individual liability on a governmental officer for actions under color of state law.  *Id.*  A plaintiff need not connect the injury to a governmental policy or custom in a person capacity suit, but "officials sued in their personal capacities . . . may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.*

The Court addresses each of Fitil's § 1983 claims and Defendants' basis for seeking summary judgment in turn.

### A. Plaintiff's Fourth Amendment Claims against Ryley

Fitil alleges that he was unlawfully seized and/or subject to excessive force by Ryley when Ryley intentionally terminated his freedom of movement by throwing the flashbang grenade.  Ryley argues there was no seizure or excessive force and, alternatively, that he is entitled to qualified immunity.

To establish a Fourth Amendment claim, Fitil must demonstrate that a seizure occurred, and that the seizure was unreasonable. *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023).  The threshold question is thus "whether the protestors were seized within the meaning of the Fourth Amendment."  *Id.*  A Fourth Amendment seizure occurs when an officer applies "the use of force with intent to restrain." *Torres v. Madrid*, 592 U.S. 306, 317 (2021).  The question is whether the conduct objectively manifests an intent to restrain, "for we rarely probe the subjective motivations of police officers in the Fourth Amendment context." *Id.*  The intent that counts is that which has "been conveyed to the person confronted." *Brendlin v. California*, 551 U.S. 249, 260–61 (2007).

Here, Ryley asserts that he was attempting to disperse the crowd, and not to make an arrest.  Thus, in Ryley's view, there was no seizure.  While Ryley's subjective intent in

7

using the flashbang may have been to disperse the crowd, that is not the focus of this Court's inquiry. "[T]he appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain, for we rarely probe the subjective motivations of police officers in the Fourth Amendment context." *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021). Although Ryley claims he was not aiming at Fitil, the flashbang nevertheless struck Fitil, creating at least a dispute of fact as to whether Fitil was seized. The objective determination of whether Ryley's use of the flashbang was reasonable is a question of material fact that should be left to the jury. A reasonable jury could conclude that Ryley deployed to flashbang either to effectuate a seizure or to disperse the crowd.

Summary judgment is also inappropriate based on the assessment of the reasonableness of the seizure, if the jury were to find one exists. For a seizure to violate the Fourth Amendment, the seizure must be "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989). In evaluating an officer's use of force, the factfinder must carefully consider the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Here, Fitil asserts that Ryley threw the flashbang directly at Fitil. Ryley, on the other hand, asserts that he threw the flashbang at the ground, and the flashbang bounced off the ground, up six feet in the air where it exploded near Fitil's head. This creates a question of fact relating to the amount and degree of the force used, making summary judgment inappropriate. *See Burbridge v. City of St. Louis*, 2 F.4th 774, 781 (8th Cir. 2021) (stating that a factual dispute regarding the amount and degree of force used

8

establishes a genuine issue of material fact for trial, thus precluding summary judgment). Further, it is unclear whether Fitil was throwing things at the officers like his protestor counterparts. This determination could have a material effect on the outcome of the case, as a reasonable jury could find Ryley's actions reasonable or unreasonable, depending on whether Fitil was throwing rocks, plastic bottles, or not throwing anything at all. These disputes of material fact make summary judgment inappropriate to dispense of Fitil's Fourth Amendment claims.

Ryley alternatively argues he is entitled to qualified immunity on the Fourth Amendment claim because it was not clearly established on the date of the incident that deploying a flashbang was a seizure under the Fourth Amendment. Qualified immunity shields a government official from liability unless the official's conduct violates what a reasonable person would know is a clearly established constitutional or statutory right. *LaCross v. City of Duluth*, 713 F.3d 1155, 1157 (2013). The qualified immunity analysis is a two-step analysis in which it's determined (1) whether the facts shown by the plaintiff establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the violation. *Smith v. City of Minneapolis*, 754 F.3d 541, 545 (8th Cir. 2014). The defendant bears the burden of proof for this defense, but the plaintiff must demonstrate that the law was clearly established. *Id.* at 546. "A right is 'clearly established' when the law is 'sufficiently clear' at the time of the challenged conduct 'that every reasonable official would understand that what he is doing is unlawful.'" *Marks v. Bauer*, 107 F.4th 840, 845 (8th Cir. 2024) (quoting *D.C. v. Wesby*, 583 U.S. 48, 63 (2018)). Plaintiff is not required to present a case directly on point, but

"existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The law was clearly established at the time of the protest that use of nonlethal force can be unreasonable if the suspect does not pose a threat to officer safety or is otherwise resisting arrest. See *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). However, as explained above, the extent to which Fitil was or was not posing a threat to safety and therefore the reasonableness of Ryley's use of the flashbang is disputed and must be determined by the factfinder. Accordingly, Ryley is not entitled to summary judgment on his qualified immunity defense.

### B. Plaintiff's First Amendment Claims against Ryley

Fitil claims Ryley violated his First Amendment rights by striking him with a flashbang in retaliation for engaging in protected activity. Ryley moves for summary judgment on this claim, arguing there is no evidence his act of throwing the flashbang was motivated by the fact Fitil was protesting. Rather, he argues Ryley acted only to disperse the unruly crowd.

"Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . . ." U.S. Const. Amend. I. To establish a First Amendment claim, Fitil must show that: (1) he engaged in activity protected by the First Amendment; (2) Ryley took adverse action against Fitil that would chill a person of ordinary firmness from continuing the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Wolk v. Brooklyn Center*, 107 F.4th 854, 859–60 (8th Cir. 2024) (citing *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022)). Regarding the third element, Fitil must show that Ryley's adverse action was

driven by animus, as opposed to Ryley's understanding of his official duties. *Id.* at 860. It is not disputed that protesting the police department is protected First Amendment expression, or that deployment of munitions in the area of protesters is an adverse action in this context. Ryley disputes that Fitil can show he was chilled by the actions of police or that Ryley's response was driven by animus.

  1. *Chilled by the Actions of Police*

As stated above, Ryley that a person of ordinary firmness would be chilled form continuing in the protected activity by Ryley's actions. The ordinary firmness test is designed to weed out trivial matters. *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003). "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Id.* at 729 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). This test is an objective test, not a subjective one. *Id.*

Ryley argues that his throwing of the flashbang did not chill Fitil's protected activity because Fitil testified he engaged in additional protests a few weeks later. But this describes a subjective test, not the appropriate objective one. "The question is not whether the plaintiff herself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done." *Id.* The question is what a person of ordinary firmness would have done in reaction to the adverse action. *Id.*

The Eighth Circuit has held that pepper spraying someone in the face would chill a person of ordinary firmness. *See Laney v. City of St. Louis*, 56 F.4th 1153, 1157 (8th Cir. 2023) ("Nor is there any dispute that the use of pepper spray 'would chill a person of ordinary firmness.'") (quoting *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014)). It

11

follows that having a flashbang grenade explode in one's face could chill a person of ordinary firmness as well. "Ultimately, this sort of question is usually best left to the judgment of a jury, twelve ordinary people, than to that of a judge, one ordinary person." *Garcia*, 348 F.3d at 729.

### 2. Adverse Action Driven by Animus

Ryley also disputes the third element of Fitil's First Amendment claim, that Ryley's adverse action was motivated at least in part by animus towards the exercise in the protected activity. *Wolk,* 107 F.4th at 860. This determination is generally a fact question. *Id.* (citing *De Mian v. City of St. Louis*, 86 F.4th 1179, 1182 (8th Cir. 2023)). However, Ryley argues there is no evidence of animus because he was merely trying to disperse the crowd.

Ryley made a number of statements about the protestors while he was at the protest. He discussed protestors having sex with police officers in response to their chants of "F--- the police" and mocked certain chants that the protestors were saying. Filing No. 53-9. Ryley is also heard discussing his plans to "have a bang in [his] hand" in order to respond to the protestors. *Id.* The meaning of these statements is ambiguous, but viewing these statements in the light most favorable to Fitil as the Court must, a reasonable jury could find that these statements support that Ryley acted with retaliatory animus towards the protestors action. Determining whether Ryley was motivated by animus is a question of material fact that must be left to the jury. Accordingly, Ryley is not entitled to summary judgment on Fitil's First Amendment claim.

### C. Schmaderer's Liability

Fitil's Fourth Amendment and First Amendment claims survive summary judgment against Ryley as explained above. However, Fitil also asserts these claims against Schmaderer in his individual capacity as well. The Court concludes Schmaderer is entitled to summary judgment on these claims.

Liability under 42 U.S.C. § 1983 is "personal," meaning that Fitil "must show each individual defendant's personal involvement in the alleged violation." *Molina v. City of St. Louis*, 59 F.4th 334, 344 (8th Cir. 2023). While *respondeat superior* does not apply to § 1983 actions, a supervisor can still be individually liable if his direct action or failure to supervise or train the offending employee caused the constitutional violation. *Elder v. Gillespie*, 54 F.4th 1055, 1065 (8th Cir. 2022). A causal link to, and direct responsibility for, the deprivation of rights is required. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

It is undisputed that Todd Schmaderer was the Omaha Chief of Police on May 29, 2020. But no evidence has been presented that shows Schmaderer had any personal involvement in the police actions at the protests in the area of 72nd and Dodge. Schmaderer was not present around 72nd and Dodge on May 29, 2020, and there has been no evidence presented to show there was a custom, policy, or practice in place that violated Fitil's constitutional rights, or that Schmaderer created, applied, or interpreted such a policy. Fitil has failed to assert any facts that would raise a question about Schmaderer's individual liability. Thus, Schmaderer is entitled to summary judgment.

**D. Municipal Liability**

Fitil also appears to assert his First and Fourth Amendment claims against the City of Omaha. Because he does not assert facts that implicate municipal liability, the City of Omaha is entitled to summary judgment on these claims.

A local government is liable for an injury caused by its employees or agents when the injury is caused by the government's policy or custom, whether it is made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Monell*, 436 U.S. at 694. A policy can be inferred from a single decision made by the highest officials responsible for setting policy. *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010). Proof that a legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right establishes municipal culpability. *Bd. of the Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 405 (1997). If the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law, the municipal action was the moving force behind the injury. *Id.*

If the municipal policy is lawful on its face, the municipality can still be liable if "'municipal action has led an employee to violate a plaintiff's rights,' and that action was 'taken with deliberate indifference as to its known or obvious consequences.'" *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 992 (8th Cir. 2015) (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 386, 389–90 (8th Cir. 2007)). A single violation arising out of lack of safeguards or training is sufficient to establish deliberate indifference when the need for such safeguards or training is obvious. *Id.*

Fitil contends that Schmaderer—in his official capacity[1]—is the individual responsible for ensuring his employees have adequate training and setting official

---

[1] As explained above, the real party in interest in an official-capacity claim is the governmental entity—here, the City of Omaha. *See Hafer*, 502 U.S. at 25

department policy, and since two different officers deployed two different flashbangs in two different manners, the policy or the training must have been inadequate. However, the evidence shows that Ryley had received an ample amount of training on the deployment of flashbangs, and Fitil has not presented any facts that give rise to an inference that the problem is widespread or persistent within the Omaha Police Department. OPD's Procedure manual has a section entitled "Response to Resistance – Special Techniques and Less Lethal Weapons" which states, "The head . . . should be avoided as targets unless deadly force is justified," thus contradicting any claim that OPD trained officers to throw flashbangs at protestors' heads. *See* Filing No. 53-5 at 822. Additionally, Fitil has not alleged any facts supporting the allegation that the City's policy or training was inadequate or that it was deliberatively indifferent. An "isolated incident cannot support a claim that the City acted with deliberate indifference by inadequately training its officers." *Szabla*, 486 F.3d at 393. Fitil's claims that the City had an unconstitutional policy or custom relating to the use of less-lethal force is not supported by the evidence in the record. Nor does the evidence show that Schmaderer in his official capacity was deliberately indifferent to the training of his officers on the use of less-lethal force. Therefore, the City of Omaha is entitled to summary judgment on Fitil's claims asserting its municipal liability.

### E. Civil Conspiracy

Lastly, Fitil claims Ryley, Schmaderer, the City of Omaha, and the John Doe officers engaged in a civil conspiracy to violate protestors' First Amendment rights by employing flashbang grenades. Defendants argue they are entitled to summary judgment

15

on the conspiracy claim because the undisputed evidence fails to show any collusion or meeting of the minds.

To establish a civil conspiracy under § 1983, Fitil must prove that (1) the defendants conspired with others to deprive him of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured him. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 2024). A civil conspiracy claim requires specific facts showing a "meeting of the minds" between the alleged conspirators. *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 860 (8th Cir. 2024).

Here, Fitil claims that certain statements made by officers show a "meeting of the minds" to formulate a plan to violate protestors' rights. Particularly, Fitil relies on a statement made by an unknown officer ("You know they won't use the firehoses.") and a statement by Ryley where he said he would have a flashbang ready when the next protestor threw something. Filing No. 51 at 34. These statements are single, isolated statements that do not show a meeting of the minds to formulate a plan of any kind, let alone a plan to violate someone's civil rights. Further, Fitil has not been able to establish where Schmaderer was during that time, nor how he would have been involved in formulating the plan to violate Fitil's rights. While there are factual disputes about individual officers' motivations in throwing the flashbangs, there is no evidence of an overarching conspiracy among Defendants. Thus, Defendants are entitled to summary judgment on Fitil's civil conspiracy claims

## IV.  CONCLUSION

For the foregoing reasons, genuine issues of material fact preclude summary judgment as to Ryley on Fitil's Fourth and First Amendment claims. Schmaderer is

entitled to summary judgment on the claims made against him in his individual capacity and official capacity, and the City of Omaha is entitled to summary judgment on the municipal liability claims. Additionally, all the Defendants are entitled to summary judgment on Fitil's civil conspiracy claims.

THEREFORE, IT IS ORDERED:

1. Defendant's motion for summary judgment, Filing No. 47, is granted in part as to the claims against Schmaderer, the City of Omaha, and Fitil's civil conspiracy claim against all three Defendants, and denied in part as to Fitil's Fourth Amendment and First Amendment claims against Justyn Ryley.

2. The City of Omaha and Omaha Police Chief Todd Schmaderer are accordingly dismissed as defendants from this suit.

Dated this 14th day of April, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge